1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9               FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ROBERT LEVINE, et al.,                No.  2:15-cv-0002 WBS AC

12            Plaintiffs,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   THE SLEEP TRAIN, et al.,

15            Defendants.

16

17        This is a case brought under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et

18   seq., and California law.  Plaintiff Robert Levine is disabled, and plaintiff Veronica Guzman is

19   Levine's fianceé.  Second Amended Complaint ("Complaint") (ECF No. 66) at 6.  The defendants

20   are The Sleep Train, Inc., Live Nation Entertainment, Inc., BGE YUBA, LLC, several Does, and

21   Coastal Breeze. Id. ¶ 8.

22        Plaintiffs move for default judgment against Coastal Breeze for violating Title IV of the

23   ADA, 42 U.S.C. § 12203(b), and the California Unruh Act, Cal. Civ. Code §§ 52(a), 54(c).[1]  The

24   motion was referred to the magistrate judge by E.D. Cal. R. ("Local Rule") 302(c)(19).

25        For the reasons set forth below, the undersigned will recommend that the motion be

26   granted.

27   ////

28   ─────────────────
     [1]  Plaintiffs have settled with Live Nation and Sleep Train.  See ECF No. 83.

1      I.  THE SECOND AMENDED COMPLAINT

2          Sleep Train Amphitheatre is "a major concert and entertainment venue."  Complaint ¶ 8.

3   The venue, together with its associated "parking lots" and "overflow parking facilities," is a

4   "public accommodation and business establishment."  Id.

5          On July 25, 2014, plaintiffs drove to a concert at the Sleep Train Amphitheatre.

6   Complaint ¶ 15.  There was not enough parking available in the venue's parking lot that was

7   specifically designated for disabled patrons to park.  Id.  Plaintiffs were accordingly directed by

8   "the Amphitheatre parking staff and security guards," to park in a lot that, according to that staff,

9   "was for 'overflow' disabled parking."  Complaint ¶ 1.[2]

10         Once plaintiffs had parked, they were told by a Coastal Breeze employee that they could

11  not park there.  Id. ¶ 17.  Plaintiff Levine showed his disabled parking placard to the Coastal

12  Breeze employee and told him "that he [Levine] had been directed to park there by parking

13  personnel and the area was a disabled parking area."  Id.

14         Plaintiffs left their car and went inside.  A Coastal Breeze employee then had plaintiffs'

15  car towed away.  Id. ¶¶ 1, 23.  When plaintiffs returned, they searched the non-ADA compliant

16  lot for their car in the dark, to the snickers and jeers of the Coastal Breeze employees, until

17  eventually learning, hours later, that their car had been towed.  Id.  ¶¶ 21-24.

18      II.  PROCEDURAL BACKGROUND

19         Plaintiffs filed their First Amended Complaint on August 25, 2015, alleging violations of

20  the ADA and the Unruh Act.  ECF No. 42.  Plaintiffs moved for default judgment against Coastal

21  Breeze on their claim alleging a violation of the Unruh Act, Cal. Civ. Code § 51(f).  ECF No. 42.

22  Section 51(f) provides that any violation of the ADA is a violation of the Unruh Act.  At oral

23  argument on the motion, plaintiffs clarified that their Unruh Act claim was predicated upon an

24  alleged violation of Title III of the ADA.  The motion was accordingly denied because plaintiffs

25  "fail to allege how Coastal Breeze Limousine is liable given that it is not the owner of the place of

26

27  _____
    [2]  The space and lot where plaintiffs were told to park, however, "was not in a designated disabled
    parking space," had "no 'disabled parking' signage," had an uneven, pot-holed, unfinished
28  surface that was covered in gravel, was not striped for disabled parking, and access to the area
    was blocked by other cars.  Complaint ¶¶ 1, 16, 18.

1   public accommodation to which plaintiffs were allegedly denied access." ECF No. 54 at 2.  On

2   January 13, 2016, plaintiffs filed their Second Amended Complaint ("complaint").  ECF No. 66.

3                                   III.  LEGAL STANDARDS

4       A.  Motion for Default Judgement

5          It is within the sound discretion of the district court to grant or deny an application for

6   default judgment.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam).  The

7   complaint's well-pleaded factual allegations "are taken as admitted on a default judgment."

8   Benny v. Pipes, 799 F.2d 489, 495 (9th Cir. 1986), as amended, 807 F.2d 1514, cert. denied, 484

9   U.S. 870 (1987).  Those well-pleaded factual allegations must be sufficient to establish plaintiff's

10  entitlement to a judgment under the applicable law.  See Alan Neuman Productions, Inc. v.

11  Albright, 862 F.2d 1388 (9th Cir. 1988) (reversing default judgment on Racketeer Influenced and

12  Corrupt Organizations Act ("RICO") claim where "the complaint fails properly to allege a claim

13  for violation" of RICO), cert. denied, 493 U.S. 858 (1989); Cripps v. Life Ins. Co. of North

14  America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("claims which are legally insufficient, are not

15  established by default").

16         In making this determination, the court may consider the following factors: (1) the

17  possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the

18  sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

19  dispute concerning material facts; (6) whether the default was due to excusable neglect; and

20  (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the

21  merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

22      B.  Title IV of the ADA

23         Title IV of the ADA provides that "It shall be unlawful to . . . interfere with any individual

24  in the exercise or enjoyment of, . . . or on account of his or her having aided or encouraged any

25  other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

26  42 U.S.C. § 12203(b); Brown v. City of Tucson, 336 F.3d 1181, 1188 (9th Cir. 2003) (discussing

27  claim for "interference" under this section, but declining the task "of defining precisely what

28  constitutes 'interference' . . . within the terms of § 503(b) [42 U.S.C. § 12203(b)]").  The federal

3

1  regulations implementing the ADA clarify that this provision prohibits "interfering with an

2  individual with a disability who is seeking to obtain or use the . . . facilities . . . or

3  accommodations of a public accommodation." 28 C.F.R. § 36.206(c)(2).

4      Moreover, similar "interference" language appears in the Fair Housing Act (42 U.S.C.

5  § 3617), the National Labor Relations Act (29 U.S.C. § 158(A)(1)), and the Family and Medical

6  Leave Act (29 U.S.C. § 2615(a)(1)). Brown, 336 F.3d at 1190-91. "Mindful that similarities

7  between statutory provisions are an indication that Congress intended the provisions to be

8  interpreted the same way, our construction and application of § 503(b) ought to be guided by our

9  treatment of the FHA's interference provision, 42 U.S.C. § 3617, as well as similar provisions in

10  the FMLA and NLRA." Id. at 1191 (citation omitted). Looking then, to the interpretation of the

11  comparable phrase under the FHA, "the language 'interfere with' has been broadly applied to

12  reach all practices which have the effect of interfering with the exercise of rights under the federal

13  fair housing laws." United States v. City of Hayward, 36 F.3d 832, 835 (9th Cir. 1994) (internal

14  quotation marks omitted), cert. denied, 516 U.S. 813 (1995).

15      Thus, for both plaintiffs to prevail on a Title IV claim, they must show, at a minimum, that

16  plaintiff Levine was exercising, or attempting to exercise, a right protected by the ADA, that

17  plaintiff Guzman was aiding or assisting Levine in exercising that right, and that defendant has

18  done something to interfere with the exercise of those rights or Guzman's assistance.

19      C.  The Unruh Act, Cal. Civ. Code §§ 52, 54

20      The Unruh Act imposes a liability of at least $4,000 on "[w]hoever denies, aids or incites

21  a denial, or makes any discrimination or distinction[,] contrary to section 51 . . .." Cal. Civ. Code

22  § 52(a). Section 51, in turn, grants to "all persons," the "full and equal accommodations,

23  advantages, facilities, privileges, or services in all business establishments of every kind

24  whatsoever." Cal. Civil Code § 51(b).

25      Section 54(c) of the Unruh Act provides:

26          A violation of the right of an individual under the Americans with
            Disabilities Act of 1990 (Public Law 101-336) also constitutes a
27          violation of this section.

28  Cal. Civ. Code § 54(c). The provision makes violators liable for statutory damages of at least

1    $1,000.  Id. § 54.3(a).

2                         IV.  ANALYSIS – EITEL FACTORS

3       A.  Prejudice to the Plaintiff

4        The first Eitel factor considers whether plaintiff would suffer prejudice if default is not

5    entered.  See Myecheck, Inc. v. Titan Int'l Sec., Inc., 2016 WL 1253281 at *4, 2016 U.S. Dist.

6    LEXIS 44192 at *10 (E.D. Cal. 2016) (Claire, M.J.).  This factor is satisfied where, as here,

7    defendant has entirely failed to respond to the complaint.[3]  That is because if plaintiffs'

8    application for default judgment were denied, the case would not be before the court on its merits,

9    and plaintiffs would be denied a judicial determination on whether they are entitled to recourse on

10    their claim.  See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 499 (C.D.

11    Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than

12    default judgment).

13        Here, plaintiffs seek monetary damages for the alleged violation of their Unruh Act rights,

14    and an injunction to protect them from future violations of their ADA rights.  Therefore, plaintiffs

15    would be prejudiced if the Court were to deny their application for default judgment, thus

16    depriving them of the damages and protection they could seek if this matter were determined on

17    the merits.  Accordingly this factor weighs in favor of default judgment.

18       B.  The Merits and Sufficiency of the Complaint

19        Given the close relationship between the merits of plaintiffs' substantive claims and the

20    sufficiency of the complaint, these factors can be discussed jointly.  Effectively, factors two and

21    three amount to a requirement that the allegations in the complaint be sufficient to state a claim

22    that supports the relief sought.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

23

24    [3]  This factor is more fully in play where the defendant has appeared and litigated the case, but a
default judgment is sought based upon an untimely response to the complaint, as in Eitel itself, or

25    where default judgment is sought as a sanction.  See Eitel, 782 F.2d at 1471-72 (reciting seven
factors to be considered after defendant late-filed an answer to the complaint); Adriana Intern.

26    Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (reciting five factors for Rule 37 sanction
of striking answer and entering default), cert. denied, 498 U.S. 1109 (1991); Wanderer v.

27    Johnston, 910 F.2d 652, 656 (9th Cir. 1990) ("[o]ur own court has fashioned a set of factors for
the district court to apply in considering whether a dismissal or default is appropriate as a Rule 37

28    sanction").

1      1. Title IV of the ADA

Plaintiffs argue that Coastal Breeze "interfered" with plaintiffs' exercise of their rights under the ADA by having plaintiffs' car towed.  Whether plaintiffs can prevail on this claim depends upon whether or not they were exercising or attempting to exercise their ADA rights when the car was towed, and whether the towing of the car interfered with those rights.

Plaintiff's First Cause of Action alleges that the lot where plaintiffs parked is, in fact, Sleep Train's "overflow accessible parking" lot:

> 6. The path of travel from the "*overflow accessible parking*" area *where plaintiffs were directed to park* is not stable, firm and slip resistant.
>
> 7. The path of travel from the "overflow accessible parking" area where plaintiffs were directed to park contains excessive cross-slopes.
>
> 8. The overflow accessible parking area where plaintiffs were directed to park is not on the shortest route of travel to the entrance
> . . . .

Complaint ¶ 17 (emphasis added).  The undersigned finds that even if the allegation is not a model of directness and clarity, it is sufficiently well-pled to support a default judgment. Complaint ¶¶ 36, 57.[4]

Taking these allegations as true, plaintiffs' parking in the overflow lot was an attempt to park in a spot that was set aside for them to protect their ADA right to equal access to the Sleep Train Amphitheatre.  See 28 C.F.R. § 36.304(b)(18) (the public accommodation "shall remove architectural barriers in existing facilities," including where feasible, "[c]reating designated accessible parking spaces").  Plaintiff Guzman "aided or encouraged" plaintiff Levine in exercising this right by driving Levine there and parking in the lot, and then assisted him in trying to find the car after it had been towed.  Complaint ¶ 6, 16.  As a consequence, plaintiffs were exercising their rights under the ADA by parking in the overflow lot.  The complaint further

---

[4]  Other allegations of the complaint strongly support an inference that the lot was the overflow disabled parking lot.  Specifically, plaintiffs allege that defendants had a policy of allowing "various limousine drivers to park their vehicles in this area, *even though they were not disabled licensed*, to allow the limousine passengers a privileged position near a public entranceway into the Amphitheatre."  Complaint ¶ 15 (emphasis added).  Similarly, the complaint alleges that "limousine drivers were allowed by defendants to park in the same area, *although such limousines were not authorized by law to park in disabled parking places.*"  Id. ¶ 16 (emphasis added).

1    alleges that Coastal Breeze interfered with plaintiffs' ability to park in that lot by trying to stop

2    them from parking there, and then by having the car towed from that location.

3         It appears that intentional discrimination need not be shown for this claim.  See  Hayward,

4    36 F.3d at 835 (the comparable "interfere with" language in the FHA "has been broadly applied

5    to reach all practices which have *the effect* of interfering with the exercise of rights under the

6    federal fair housing laws") (emphasis added).  However, even if intentional discrimination were

7    required for this claim, plaintiffs have sufficiently alleged that Coastal Breeze knew that plaintiff

8    Levine was disabled, that plaintiffs were parked in the overflow disabled lot, that plaintiffs were

9    parked there because of plaintiff Levine's disability, and that knowing all this, Coastal Breeze had

10   plaintiffs' car towed.

11        The complaint accordingly pleads sufficient facts to support a claim of "interference"

12   under Title IV of the ADA, 42 U.S.C. § 12203(b).

13                    2.  The Unruh Act, Cal. Civ. Code § 52(a)

14        Plaintiffs separately allege a claim under Section 52(a) of the Unruh Act, independently of

15   their ADA claim.  Here, plaintiffs must plead "intentional discrimination."  Greater Los Angeles

16   Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 425 (9th Cir. 2014) ("to

17   establish a violation of the Unruh Act independent of a claim under the Americans with

18   Disabilities Act ('ADA')," plaintiff "must 'plead and prove intentional discrimination in public

19   accommodations in violation of the terms of the Act'") (quoting Munson v. Del Taco, Inc., 46

20   Cal. 4th 661 (2009)).

21        Plaintiffs allege that the lot where they were parked was the overflow disabled lot, that

22   plaintiffs told this to the Coastal Breeze employees, that Plaintiff Levine showed his disabled

23   parking placard to the employees, and that the employees nevertheless had someone tow

24   plaintiffs' car.  The complaint accordingly pleads sufficient facts to support a claim of inciting,

25   under Section 52(a) of the Unruh Act, a violation of plaintiff Levine's rights guaranteed by

26   Section 51 of the Act.[5]  As noted, the statutory damages here are a minimum of $4,000 for each

27

28   ───────────────────
     [5]  Plaintiffs do not argue that the Section 52(a) violation is also a violation of plaintiff's Guzman's rights.

                                          7

1  violation.

2                  3.  The Unruh Act, Cal. Civ. Code § 54

3        Section 54(c) of the Unruh Act provides:

4            A violation of the right of an individual under the Americans with
             Disabilities Act of 1990 (Public Law 101-336) also constitutes a
5            violation of this section.

6  Cal. Civ. Code § 54(c).  As discussed above, the complaint sufficiently alleges that Coastal

7  Breeze violated the rights of both plaintiffs under Title IV of the ADA.  Accordingly, the

8  complaint also alleges a violation of the rights of both plaintiffs under Section 54(c) of the Unruh

9  Act.  The statutory damages here are a minimum of $1,000 for each violation.  Cal. Civ. Code

10 § 54.3(a).

11       However, "[a] person may not be held liable for damages pursuant to both this section and

12 Section 52 for the same act or failure to act."  Cal. Civ. Code § 54.3(c).  Therefore, since Coastal

13 Breeze is liable for the Section 52(a) violation against plaintiff Levine, it can only be held liable

14 under Section 54(c) for the violation against plaintiff Guzman.

15       C.  Sum of Money Involved

16       Under this Eitel factor, "the court must consider the amount of money at stake in relation

17 to the seriousness of Defendant's conduct."  PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp.

18 2d 1172, 1176-77 (C.D. Cal. 2002).  Plaintiffs here seek a grand total of $4,000 in statutory

19 damages from Coastal Breeze for each plaintiff.  This is the minimum statutory damages

20 applicable under this statute.  Cal. Civ. Code § 52(a).  This amount appears to be de minimis

21 considering the trouble plaintiffs were put to in being forced to search for their car in the dark,

22 through a non-ADA compliant parking lot, under the sneers and taunts of Coastal Breeze

23 employees, and having their transportation taken away.  This factor thus weighs in favor of a

24 default judgment.[6]

25       D.  Disputed Material Facts

26       This Eitel factor "considers the possibility of dispute as to any material facts in the case.

27     [6]  Indeed, the small amount of money involved may help to explain why Coastal Breeze has not
   bothered to defend itself in this lawsuit, despite having been served with the complaint and with
28 the subsequent papers relating to the default judgment motion.

1   Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those

2   relating to damages." <u>Pepsico</u>, 238 F. Supp. 2d at 1177.  Here, since Coastal Breeze has not

3   appeared in this lawsuit, the court has no way to know if any of the facts alleged in the complaint

4   would be disputed if this matter were litigated on the merits.[7]  This factor thus does not weigh

5   either for or against entry of a default judgment.[8]

6           E.  <u>Excusable Neglect</u>

7           This is another factor that is most applicable if the requested default is because of an

8   untimely pleading or is requested as a sanction.  Here, Coastal Breeze has made no appearance at

9   all, so there is no way for the court to know if it has failed to appear because of excusable neglect.

10  Accordingly, this factor does not weigh in favor of, or against, default judgment.

11          F.  <u>Policy Favoring Merits Determinations</u>

12          This factor always weighs against default judgment, since a default judgment would

13  preclude a judgment on the merits.  However, standing alone, it cannot preclude a summary

14  judgment.  <u>See</u> <u>United States v. Espinor</u>, 2016 WL 2880191 at *5, 2016 U.S. Dist. LEXIS 65021

15  at *13 (E.D. Cal. 2016) (Claire, M.J.) (this policy "does not preclude default judgment where, as

16  here, the defendants fail to appear or defend themselves after due notice").  Otherwise, Fed. R.

17  Civ. P. 55(b) – which provides for a default judgment without a determination on the merits –

18  would have no meaning.  <u>See</u> <u>J & J Sports Prods., Inc. v. Becerra</u>, 2015 WL 7771174 at *2, 2015

19  U.S. Dist. LEXIS 162406 at *4 (D. Ariz. 2015) ("[a]lthough the policy favoring decisions on the

20  merits counsels against default judgment, the mere existence of Rule 55(b) indicates this policy is

21  not dispositive").

22                          V.  CONCLUSION

23          The undersigned has considered all the <u>Eitel</u> factors and finds that they warrant a default

24  judgment in this case.  Most notably, plaintiffs have alleged facts that, if true, would entitle them

25  to judgments under Title IV of the ADA and Sections 52 and 54 of the Unruh Act, together with

26  monetary damages and injunctive relief.

27  ─────────────
    [7]  Of course, for purposes of this default judgment motion, the allegations are assumed to be true.
    [8]  This factor, like several others, are most applicable where the default judgment is sought as a
28  sanction against a party who was litigating the case on the merits.

                                9

1    Accordingly, IT IS HEREBY RECOMMENDED that plaintiffs' Motion for Default

2    Judgment against Coastal Breeze (ECF No. 82), be GRANTED as follows:

3    1. Both plaintiffs should be awarded a default judgment against Coastal Breeze on

4    plaintiffs' Fifth Cause of Action, and defendant Coastal Breeze should be enjoined from

5    interfering with plaintiffs' right to use the overflow parking lot, under Title IV of the ADA, 42

6    U.S.C. § 12203(b);

7    2. Plaintiff Levine should be awarded a default judgment against Coastal Breeze on his

8    Second Cause of Action, and awarded $4,000 in statutory damages under Cal. Civ. Code § 52(a);

9    3. Plaintiff Guzman should be awarded a default judgment against Coastal Breeze on her

10    First Cause of Action, and awarded $1,000 in statutory damages under Cal. Civ. Code §§ 54(c)

11    and 54.3(a).

12    These findings and recommendations are submitted to the United States District Judge

13    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days

14    after being served with these findings and recommendations, any party may file written

15    objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

16    document should be captioned "Objections to Magistrate Judge's Findings and

17    Recommendations."  Any response to the objections shall be filed with the court and served on all

18    parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

19    objections within the specified time may waive the right to appeal the District Court's order.

20    Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

21    (9th Cir. 1991).

22    DATED: May 23, 2016

23

24    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

25

26

27

28